IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-00687-D

| | |
|---|---|
| CAREN ANNE VANDERVORT, )<br>)<br>Plaintiff/Claimant, )<br>)<br>)<br>)<br>v. )<br>)<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | MEMORANDUM AND<br>RECOMMENDATION |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-23, -24] pursuant to Fed. R. Civ. P. 12(c). Claimant ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on March 21, 2010, alleging disability beginning July 31, 2009. (R. 13, 162-68, 205). Her claim was denied initially on May 28, 2010, and upon reconsideration on February 1, 2011. (R. 50-65). A hearing before Administrative Law Judge ("ALJ") Robert Rideout was held on April 25, 2012, at which Claimant, who was represented by counsel, and a vocational expert ("VE") appeared and testified.

(R. 21-49). On June 22, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 13-20). Claimant's request for review of the ALJ's decision by the Appeals Council was denied on August 30, 2013. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant contends the ALJ erred in evaluating Claimant's credibility and in finding Claimant has the Residual Functional Capacity ("RFC") to perform her past relevant work. Pl.'s Mem. [DE-23-1] at 10-13.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant has not engaged in substantial gainful employment since the alleged onset date. (R. 15). Next, the ALJ determined Claimant has the severe impairments of carpal tunnel syndrome, migraine headaches, and obesity. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with the additional limitations of frequent but not constant bilateral fingering and no more than occasional exposure to unprotected heights of moving machinery. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 18-19). At step four, the ALJ concluded Claimant is capable of performing her past relevant work as an insurance secretary. (R. 19).

### B. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's April 25, 2012 administrative hearing, Claimant was 43 years old and living with her husband and adult son. (R. 27-28). She completed high school but has no secondary education or vocational training. (R. 30). Claimant's husband works and they have no other source of income. (R. 28-29). Claimant worked for an insurance company from October 1986

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

until July 31, 2009. (R. 30-31). During that time Claimant worked in a variety of positions, the last being that of a senior administrator, which required a substantial amount of computer work, such as balancing accounts and entering new business applications and policy changes, as well as copying, collating, and stapling a large number of documents twice a week, using an adding machine for most of the day twice a week, and stocking supplies. (R. 31-32). Claimant estimated she spent at least half the day typing or doing some sort of repetitive activity. (R. 35).

Claimant explained numerous medical conditions supporting her disability claim and inability to work. Claimant is 5 feet 8 inches tall and weighed 210 pounds at the time of the hearing. (R. 27). Claimant left her job due to pain in her hands, which she tolerated for several years until it worsened to the point that she sought treatment and elected to undergo bilateral carpel tunnel surgery. (R. 30-31). Her hands constantly hurt and she experiences stabbing pains in her palms that radiate to her forearm. (R. 34). Claimant received minimal relief from her first carpel tunnel surgery, but elected to go ahead with surgery on her other hand. (R. 36). Claimant's left arm has started to "jerk" and she continues to experience tingling and numbness in her fingertips even after surgery. (R. 34, 42). Claimant cannot continuously use her hands and has difficulty with routine daily activities. (R. 35). Medication provides some relief from the pain in her hands. (R. 38).

Claimant also has a headache every day and chronic debilitating migraine headaches two or three times per month that last for three days, during which she cannot function and must sit or lie down in a dark room. (R. 34, 42). Her migraine medication is not always helpful, causes drowsiness, and interferes with her ability to think clearly. (R. 36-38). Claimant experiences shoulder pain related to her headaches and hand pain and has a herniated disc in her lower back that prevents her from standing or walking for long periods on time. (R. 41, 44). Claimant underwent

5

physical and occupational therapy and received injections for her hands and headaches but they provided little relief. (R. 40-41).

Claimant estimates that since August 2009 she has been incapacitated–unable to do the activities of daily living–at least half of each month due to the pain in her hands or headaches. (R. 37). For example, Claimant has difficulty with personal care such as drying her hair, applying makeup, and shaving her legs and has to take breaks after five minutes of activity. (R. 38). Claimant also has difficulty pushing a shopping cart, stirring, vacuuming, sweeping, and opening jars, cans or packaging. (R. 39). She cannot carry a pot of water from the sink to the stove and cannot use her left hand to remove items from the oven or to pick up a drink because her hand loses strength. *Id.* Claimant estimates she could lift a half-gallon of milk (roughly four pounds) with her right hand, but not with her left. (R. 40). Claimant has a driver's license and only drives once or twice a week to the grocery or drug stores. (R. 29). She experiences pain in her hands when driving and has to constantly change her hand position, but does not have a handicapped plate or placard. *Id.* Claimant is not active in any clubs or groups and mostly stays home. (R. 45).

The ALJ took judicial notice that Claimant's husband was present and would corroborate Claimant's testimony. (R. 46).

C.   **Vocational Expert's Testimony at the Administrative Hearing**

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 46). The VE classified Claimant's past work as insurance secretary, DOT code 201.362-030, sedentary exertion level (light as performed), with an SVP of 6. (R. 47). The ALJ then asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant, who is able to perform medium exertional work with the limitations of frequent but not constant bilateral

fingering and only occasional exposure to unprotected heights and moving machinery. *Id.* The ALJ inquired as to whether such a person could perform Claimant's past relevant work, and the VE responded affirmatively. *Id.* The ALJ next asked the VE to assume the same limitations as the prior hypothetical but limited to light exertional work and only occasional fingering and occasional handling bilaterally. (R. 48). The VE opined that such a person could not perform Claimant's past relevant work or any other work within the regional or national economies. *Id.*

## V. DISCUSSION

### A.  The ALJ's Credibility and RFC Determinations

Claimant contends the ALJ erred in evaluating Claimant's credibility and in finding Claimant has the RFC to perform her past relevant work. Pl.'s Mem. [DE-23-1] at 10-13. The Commissioner contends that substantial evidence supports the ALJ's credibility and RFC determinations. Def.'s Mem. [DE-25] at 10-13.

An individual's RFC is the capacity which the individual possesses despite the limitations caused by her physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the

7

combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses Claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

Furthermore, when determining RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not

8

discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *3; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Claimant relies on her hearing testimony in support of her contention that she cannot perform her past relevant work, specifically the substantial amount of data entry required and that she can no longer perform typing or other repetitive work and suffers from debilitating headaches two to three times per month. Pl.'s Mem. at 10-13. The ALJ determined Claimant's statements regarding the severity and limiting effects of her symptoms were not entirely credible. (R. 18). In support of that finding, the ALJ discussed the medical evidence and explained why it did not support the limitations alleged by Claimant. (R. 16-18) (citing Exhibits 4F, 5F, and 6 F). The ALJ noted the following: an EMG study revealed only mild carpel tunnel syndrome before surgery and no evidence of spinal radiculopathy or ulnar mononeuropathy (R. 16, 366-68); Dr. Wheeless reported in July 2009 that both Claimant's hands were sensate, she moved her wrists and elbows well, and she made normal fists bilaterally (R. 16, 353); post-carpel tunnel surgery Claimant reported some tenderness along the incisions but moved her wrists well, could make a full fist with each hand, and had intact sensation of her fingers (R. 16, 288, 304, 317, 320-22, 328-32, 335-48); on examination in July 2010, Claimant displayed normal ranges of motion of her cervical spine, shoulders, elbows and wrists, had normal

9

motor function on wrist flexion and extension with a normal grip, normal sensation of all digits, and normal strength of both upper extremities (R. 16-17, 329-31); in September, October and November 2010, Claimant was reported to have some tenderness at the base of both thumbs but had excellent thumb abduction strength with no gross deformity, moved her wrists well, made normal fists with intact sensation, and had full strength and normal reflexes of her lower extremities (R. 17, 307, 314-15, 320-23); in October 2010 it was noted that Claimant's surgical incisions had healed well (R. 17, 315) and occupational therapist April Hedrick reported that Claimant was able to oppose her thumbs to her small fingers bilaterally with intact sensation to light touch in both hands, had grip strength of 19 pounds on the right and 20 pounds on the left and could pinch 10 pounds on the right and 12 pounds on the left (R. 17, 311-12); despite complaints of persistent headaches, in August 2009, Claimant reported her headaches improved significantly on increased Neurontin and she was doing well and in September 2011, it was noted Claimant's headaches had been reduced in frequency and intensity since beginning physical therapy (R. 17, 290, 375); a 2008 MRI brain scan showed likely microvascular changes from hypertension, and treatment notes indicate her hypertension has been well controlled (R. 17, 407, 472-76); and Claimant's neurological exams were generally unremarkable (R. 17-18, 288-98, 479-87). The ALJ in conclusion summarized his findings as follows:

> The above-summarized evidence shows that the claimant's carpal tunnel syndrome was mild in severity even before surgical corrections that proceeded without complication. An MRI scan of her brain was essentially normal with no evidence of any neurological basis for her headaches. Despite her complaints of persistent headaches and hand symptoms, her neurological exams are generally unremarkable with good strength, sensation and reflexes of her upper extremities. She is only mildly obese with no significant cardiovascular or pulmonary disease and good motion and strength of her lower extremities as well. The undersigned concludes from this evidence that the claimant's physical impairments do not prevent her from

sitting, standing or walking 6 hours in an 8-hour workday and lifting, carrying, pushing or pulling 25 pounds frequently and 50 pounds occasionally, as required for medium work.

(R. 18).

The ALJ also relied on the opinion of Dr. Robert Gardner, a state agency DDS consultant, who found Claimant capable of medium exertion work with frequent but not constant fingering due to her history of carpel tunnel syndrome. (R. 18, 58-65). The ALJ further limited Claimant to avoiding work requiring more than occasional exposure to hazards based on her complaints of headaches and her use of pain medication. (R. 18). Where the opinions of the state agency medical consultants are consistent with the other evidence of record, as is the case here, the ALJ is entitled to rely upon the opinions in determining a claimant's RFC. *Smith v. Schweiker*, 795 F.2d 343, 356 (4th Cir. 1986). Moreover, Claimant has pointed to no medical opinion in the record supporting the level of functional limitation she suggests. Finally, the ALJ noted inconsistent statements made by Claimant that undermined her credibility as to the severity of her symptoms, including that "[o]n numerous occasions, [Claimant] admitted to significant improvement in her symptoms after surgery, a change or increase in medications, or physical therapy, but always complained of a subsequent increase in symptom severity although physical exams showed no increased pathology." (R. 18-19).

Claimant is essentially asking the court to reconsider the testimonial and objective medical evidence and give controlling weight to Claimant's testimony. It is not within the province of the court to reweigh the evidence, even if the court might reach a different result, where the ALJ has considered and analyzed all the relevant evidence and his decision is supported by substantial evidence, as is the case here. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589). The ALJ indicated he considered the entire record, including Claimant's symptoms, the objective medical

11

evidence and other evidence, as well as opinion evidence in formulating the RFC, and substantial evidence supports his finding that Claimant is capable of returning to her past relevant work. (R. 16-19); *see Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word.") (citation omitted). Accordingly, the ALJ did not err in his credibility or RFC determinations.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-23] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-24] be ALLOWED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 2nd day of January 2015.

Robert B. Jones, Jr.
United States Magistrate Judge